UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIAN K COLE | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-0425 (ESH) |
| ISAAC FULWOOD JR., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Brian Cole has been incarcerated since 1989 for voluntary manslaughter. He is suing the United States Parole Commission, three of its commissioners, and Isaac Fulwood Jr., its chairman, claiming he was unlawfully denied parole. Mr. Cole has been denied parole three times and argues that his last two parole denials constitute violations of the *Ex Post Facto* Clause because the U.S Parole Commission impermissibly used the less favorable 2000 Parole Guidelines ("2000 Guidelines"), 28 C.F.R § 2.80, rather than the 1987 Regulations ("1987 Regulations"), D.C. Mun. Regs. tit. 28, §§ 204.1 *et seq.* (1987) (repealed Aug. 5, 2000). He also challenges his most recent parole denial under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Before the Court are plaintiff's motion for summary judgment and defendants' motion to dismiss or in the alternative for summary judgment. For the reasons stated herein, the Court will grant defendants' motion and deny plaintiff's motion.

### BACKGROUND

**I.    REGULATORY FRAMEWORK**

In 1997 Congress enacted the National Capital Revitalization and Self-Government Improvement Act. Pub.L. No. 105-33 § 11231; 111 Stat. 712, 734-37 (codified at D.C. Code §§

24-131 *et seq*).  As part of that law, the U.S. Parole Commission ("USPC") assumed the responsibilities of the District of Columbia Board of Parole ("the Board").  *See Taylor v. Reilly*, No. 10-5153, 2012 WL 2892392 at *1 (D.C. Cir. 2012).  The USPC was to apply "'the parole laws and regulations of the District of Columbia'" to D.C. Code offenders.  *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008)[1] (quoting Pub.L. No. 105-33 § 11231(c)).  In 2000, the USPC issued new parole guidelines applicable to D.C. Code offenders who received an initial parole hearing after August 5, 1998.  *Id.* at 72.  The 2000 Guidelines replaced the 1987 Regulations that the Board had previously operated under.  *Id.* at 69.

A detailed explanation of the differences between the two sets of guidelines is set forth in *Sellmon*.  551 F. Supp. 2d at 69-73, 87-91.  For the purposes of this case a more abbreviated summary will suffice.  Under both the 1987 Regulations and the 2000 Guidelines an initial "salient factor score" ("SFS") – an actuarial approximation of parole suitability – is calculated based on a combination of pre and post incarceration factors.  *Id. at* 73.  Based on the SFS, a prisoner is presumptively either suitable or unsuitable for parole.  *Id.*  However, both the 1987 Regulations and the 2000 Guidelines allow the USPC to deny parole to a presumptively suitable prisoner if there are "unusual circumstances."  *Id.*

The major difference between the two sets of guidelines, for the purposes of this case, is that the 2000 Guidelines allow departure from the decision reached based on the SFS score "on any basis . . . [not] 'fully taken into account in the guidelines.'"  *Id.* (quoting 28 C.F.R § 2.80(n)).  Additionally, under the 2000 Guidelines, the USPC is encouraged to consider "offense accountability" when making parole decisions.  *Id.* at 88.  Unlike the 2000 Guidelines, "the 1987

---

[1] *Sellmon* was affirmed on appeal in *Phillips v. Fulwood*, 616 F.3d 577 (D.C. Cir. 2010), with regard to one plaintiff.  The other appeals were voluntarily dismissed.  *Sellmon v. Reilly,* 2009 WL 5125203, at 1 (D.C. Cir. 2009).

Regulations presume that the minimum sentence imposed by the sentencing court appropriately accounts for a parole candidate's offense severity and accountability and that the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct." *Id*. The 1987 Regulations required any departure from the presumption to be justified by reference to one or more of an enumerated list of possible reasons, which were intended to identify prisoners who were a greater risk for parole than indicated by their SFS. *Id.* at 71. The permissible factors justifying the denial of parole to a presumptively eligible prisoner, under the 1987 Regulations, are listed in Appendices 2-1 and 2-2. D.C. Mun. Regs., tit. 28, § 204.1; *id.* apps. 2-1 & 2-2. Appendix 2-1 lists: (1) "repeated failure under parole supervision;" (2) "ongoing criminal behavior;" (3) "a lengthy history of criminally related alcohol abuse;" (4) "a history of repetitive sophisticated criminal behavior;" (5) "an unusually extensive and serious prior record;" or (6) "unusual cruelty to victims." *Id.* app. 2-1. Appendix 2-2 is entitled "Rehearing Guidelines – Point Assessment Grid and Findings Worksheet for Rehearings." *Id.* app. 2-2. It lists three factors which can justify a departure from the guidelines: (1) "change in the availability of community resources leading to a better parole prognosis;" (2) "poor medical prognosis;" or (3) "other change in circumstances." *Id.*

## II.   PLAINTIFF'S PAROLE HEARINGS

Cole is incarcerated for a homicide committed in 1989. (Pl. Statement of Undisputed Facts ("Pl. SUF") ¶ 2.) On the day of the crime, he and a friend were smoking crack cocaine and when an argument started, Cole stabbed his friend over 100 times. (Def. Statement of Undisputed Facts ("Def. SUF") ¶ 2.) After her death Cole remained in the apartment for three days, during which time he was high on crack cocaine and attempted suicide multiple times.

(Compl. ¶ 21.) In 1990, Cole pleaded guilty to voluntary manslaughter while armed and was sentenced to 13½ to 45 years in prison. (Pl. SUF ¶ 5.)

Cole has been denied parole three times. In May 1998, Cole had his first initial parole hearing. (*Id.* ¶ 8.) The Board granted him parole and transferred him to a halfway house. (*Id.* ¶ 10.) However in August 1998, the Board set its initial decision aside, because the family of Cole's victim had not had the opportunity to testify at his parole hearing. (*Id.* ¶ 11.)

Cole's second initial hearing occurred in December 1998, after the USPC assumed the responsibilities of the Board, supposedly under the 1987 Regulations. (*Id.* ¶¶ 12-13); *see Sellmon,* 551 F. Supp. 2d at 68. The USPC found that he was presumptively suitable for parole under the 1987 Regulations but deviated from that presumption and denied him parole. (*Id.*) The USPC explained that:

> You continue to be scored under the 1987 guidelines of the D.C Board of Parole. Those guidelines indicate that parole should be granted at this time. After a review of all factors and information presented, a departure from the guidelines at this consideration is warranted for the following reasons: You committed an extremely brutal murder in which you stabbed the victim over a hundred times, leaving her body almost unrecognizable. Also, after you murdered the victim you made no effort to contact the authorities or her family, remaining with the body in the victim's apartment for 3 days before the crime was discovered.

(*Id.*) Cole subsequently filed an unsuccessful *habeas corpus* petition challenging this decision; it is therefore not at issue in this case. (*Id.* ¶ 15.)

Cole's next parole hearing was in 2004. (*Id.* ¶ 16.) Once again he was presumptively suitable for parole based on his SFS of zero. (*Id.*) Again, defendants denied him parole, stating:

> [D]eparture from the guidelines at this consideration is warranted because your overall offense behavior was more serious than reflected by your sentence because it involved the following aggravating factors: You committed an extremely brutal murder in which you stabbed the female victim over 100 times leaving her body almost unrecognizable. Also, after you murdered the victim, you made no effort to contact the authorities or her family, remaining with the body in the victim's apartment for three (3) days before the crime was discovered.

4

(*Id.* ¶ 17.)

Cole's most recent hearing was in 2009, and a decision was issued in 2010. (*Id.* ¶¶ 19, 24.) He was again presumptively suitable for parole and the hearing examiner recommended that he be paroled. (*Id.* ¶¶ 19-20.) However, the decision was postponed until the victim's family could be contacted and the family members repeated their strong opposition to Cole's parole. (*Id.* ¶ 21.) After this, a second hearing examiner also recommended parole, noting that Cole had already been denied parole twice "as a result of the cruelty to his victim." (*Id.* ¶ 23.) However, the USPC disregarded the recommendations of the two examiners and denied him parole:

> You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines indicate that parole should be granted at this time. After consideration of all factors and information presented, a departure from the guidelines is warranted because the offense behavior involved the aggravating circumstances: brutal murder involved over 100 stabbings; victim was left for 3 days after death and the likelihood of repeat violent behavior.

(*Id.* ¶ 24.)

Plaintiff then filed this suit, arguing 1) that by considering offense accountability, the USPC had improperly applied the 2000 Guidelines at his hearings and thus violated the *Ex Post Facto* Clause; and 2) that his 2010 parole denial was arbitrary and capricious in violation of the APA. In order to prevail on his first claims, Cole has the burden of showing that the 2000 Guidelines and not the 1987 Regulations were applied to him, and that their application created a substantial risk of increased incarceration. *Garner v. Jones,* 529 U.S. 244, 255 (2000). As explained herein, he has failed to meet that burden, and thus his motion for summary judgment will be denied, and defendants' will be granted. Second, summary judgment will be granted for the government on the APA claim because the USPC's actions are unreviewable under the APA.

## ANALYSIS

**I.     EX POST FACTO CLAUSE**

"The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission." *Sellmon,* 551 F. Supp. 2d at 84 (citing U.S. Const. art I, § 9, cl. 3; *Collins v. Youngblood,* 497 U.S. 37, 42-43 (1990)).  The retroactive application of new parole guidelines violates the *Ex Post Facto* Clause when "as applied to [the plaintiff's] own sentence, the [regulations] create[] a significant risk of increasing his punishment." *Garner* 529 U.S. at 255.  As explained by the D.C. Circuit in *Fletcher v. Reilly,* when evaluating an *ex post facto* claim, "[t]he controlling inquiry is one of practical effect," rather than facial difference.  433 F.3d 867, 879 (D.C. Cir. 2006).  A plaintiff challenging the retroactive application of parole regulations must therefore show that such application creates "a substantial risk of lengthier incarceration." *Sellmon*, 551 F. Supp. 2d at 84 (internal quotations omitted).

In the instant case, defendants claim that there can be no *ex post facto* violation because they applied the 1987 Regulations at each parole hearings.  (Def. Mot. at 22.)  The fact that they referenced those Regulations is, of course, not enough to resolve this case. *See Sellmon,* 551 F. Supp. 2d at 96 ("Defendants may not avoid a constitutional challenge simply by citing the correct rules . . . Although defendants claimed to have applied the 1987 Regulations, plaintiff argues that their decision is in effect an application of the 2000 Regulations.  First, plaintiff argues that defendants impermissibly considered offense accountability in denying him parole. (Pl. Mot. at 21-22, 25.)  Second, he argues that reliance on "unusual cruelty to victims" in denying parole was not permissible at parole rehearings, but only at initial hearings, under the 1987 Regulations.  (Pl. Mot. at 19-20, 25).  Neither argument has merit.

As this Court held in *Sellmon,* when the reason for departing given under a new regime of parole guidelines was also available under the old regime, there can be no *ex post facto* violation. 551 F. Supp, 2d at 95; *see also Glascoe v. Bezy,* 421 F.3d 543, 548 (7th Cir. 2005). That is the case here; under both sets of regulations, "unusual cruelty to victims" was an available reason to deny parole. Therefore, even if it is arguable that the 2000 Guidelines were applied to him, it did not result in "a significant risk of prolong[ed] incarceration." *Garner,* 529 U.S. at 251.

### A. The 1987 Regulations Did Limit the Discretion of Board and USPC

Defendants' argument that the 1987 Regulations did not limit the discretion of the board in denying parole essentially asks this Court to reverse its prior holding in *Sellmon.* In that case, the Court held that the 1987 Regulations limited the Board to the factors enumerated in Appendices 2-1 and 2-2 when departing from the outcome suggested by the SFS. 551 F. Supp. 2d at 71. If that were not so, no *ex post facto* violation would have been possible for any of the *Sellmon* plaintiffs. *See id.* at 92-94, 96-100. Indeed, in *Sellmon,* this Court specifically dispensed with the "remarkable argument" "that the Board exercised unlimited discretion in making its parole decisions." *Id.* at 89. It did so again in denying the government' request for a rehearing in *Sellmon. See Sellmon v. Reilly,* 561 F. Supp. 2d 46, 51-52 (D.D.C. 2008). For the reasons set forth in those opinions, it again rejects the argument that the Board had unlimited discretion.

### B. Cole's Parole Was Denied for Unusual Cruelty to Victims in 2004

Plaintiff argues that his parole was denied at his first rehearing in order to hold him further accountable for his offense. (Pl. Mot. at 21.) At the time of Cole's 2004 parole hearing, *Sellmon* had not yet been decided and the USPC was operating under the 1987 Regulations, with one caveat, it was considering offense accountability when making parole decisions, at least for

"especially heinous crimes." (Def. Mot. at 22.)   Plaintiff argues that because offense accountability, not a permissible consideration under the 1987 Regulations, could have been taken into account, there is a clear *ex post facto* violation. (Pl. Rep. at 5-6.)   However, "the controlling inquiry is one of practical effects," and if Cole's parole would have been denied under the 1987 Regulations for unusual cruelty, then there can be *no ex post facto* violation. *Fletcher,* 433 F.3d at 877-78.

Cole's 2004 parole hearing presents a situation very similar to that of Tony Sellmon, the named plaintiff in the *Sellmon* case.   Sellmon was sentenced to 15 years to life in 1992 for second degree murder while armed and possession of a firearm during a crime of violence or dangerous offense. *Sellmon* 551 F. Supp. 2d at 79.  Like Cole, Sellmon was presumptively suitable for parole at each of his hearings. *Id.*   Unlike Cole, Sellmon was considered for parole under the 2000 Guidelines, not the 1987 Regulations, which he was entitled to have applied. *Id.* Sellmon was first denied parole "because the murder that [Sellmon] committed while armed was extremely brutal, as evidenced by the massive head trauma . . . inflicted upon the victim." *Id.*  At his rehearing, Sellmon was again denied parole and the USPC relied on the same reason. *Id.* at 80.  The examiner who conducted the rehearing recommended that the USPC deny parole, stating:

> This examiner believes that accountability for the offense behavior not only is a consideration of the factors that go into the guideline calculation, but also factors that are outside of that calculation. That would include the brutality exhibited by an offender in committing a murder. In this case, subject chose to beat a female victim to death by beating her in the head with a gun, thereby, causing massive head trauma and her ultimate death. This methodology is extremely brutal. I do not believe that it is captured by the guidelines.... I do not believe that the extreme brutality of the offense is captured by his current service of nearly 14 years, or even by the next Reconsideration Hearing date, which would be scheduled after service of approximately 17 years . . . .

*Id.* at 79-80.  "Sellmon argue[d] that . . . the Hearing Examiner's improper focus on offense accountability, substantially increased the risk of extending his incarceration." *Id.* at 95.[2]  This Court disagreed:

> [I]t appears quite clear that the USPC departed on the basis of the brutality of his crime.  Under the 1987 Regulations, the unusual cruelty of a crime qualified as an "unusual circumstance" that justified departure from the guidelines recommendation. Given that this departure was available under either regime, Sellmon has failed to demonstrate that the application of the 2000 Guidelines to his case substantially increased his risk of lengthier incarceration.

*Id.* (footnote omitted).  In a footnote to that passage, the Court also clarified that "[t]he fact that the Examiner thought of the 'brutality' as related to offense accountability does not change the fact that 'unusual cruelty' was explicitly listed as a basis for a departure under the 1987 Regulations."  *Id.* at 95 n.33.[3]

---

[2] Sellmon's case was actually stronger than Cole's, as he also contended that the change in SFS calculation created a substantial risk of increased incarceration, and the USPC acknowledged that it was applying the 2000 Guidelines.  *Id.*

[3] Cole's case is also similar to that of another *Sellmon* plaintiff, Daru Swinton.  551 F. Supp. 2d at 93.  Swinton was sentenced to five years to life for armed robbery and twenty months to five years for attempted kidnapping, after holding two children hostage at gun point while forcing their mother to withdraw money from several ATMs.  *Id.* at 81-82.  Although he committed his crime in 1998, Swinton's parole hearings were conducted under the 2000 Guidelines.  *Id.*  In denying Swinton parole at his rehearing, the USPC departed from the SFS recommendation, because of his "'callous disregard for [his] victims, to include two young boys, coupled with [his] propensity to carry weapons . . . .'"  *Id.* at 93 (alterations in original).  Because the behavior evidencing "callous disregard for [his] victims," for which the USPC denied his parole under the 2000 Guidelines, would have allowed the Board to deny him parole under the 1991 Policy Guidelines, for "unusual cruelty to victims," this Court held that Swinton had failed to show that the application of the 2000 Guidelines to him created a substantial risk of increased incarceration and thus that there was no *ex post facto* violation.  *Id.*  Admittedly, there is one difference between Swinton on the one hand, and Sellmon and Cole on the other, in that Swinton's crime was committed after the publication of the 1991 Policy Guidelines.  *Id.* at 81.  However, this difference is not significant, for the 1991 Policy Guidelines, which were published in order to limit the subjectivity involved in parole decisions, actually limited the Board's discretion more than the 1987 Regulations; if Swinton could have been denied parole under the 1991 Policy Guidelines, he could have been under the 1987 Regulations as well.  *See id.* at 71-72, 86-87.

Cole's situation is nearly identical, except that the USPC in Cole's case stated that it was relying on the 1987 Regulations. The Commission explained his denial when he was presumptively suitable by stating:

> [D]eparture from the guidelines at this consideration is warranted because [his] overall offense behavior was more serious than reflected by [his] sentence . . . [he] committed an extremely brutal murder in which [he] stabbed the female victim over 100 times leaving her body almost unrecognizable. Also, after [he] murdered the victim, [he] made no effort to contact the authorities or her family, remaining with the body in the victim's apartment for three (3) days before the crime was discovered.

(Pl. SUF ¶ 17 (first alteration in original).) Just as in *Sellmon,* even if the Commission "thought of the 'brutality' as related to offense accountability [that] does not change the fact that 'unusual cruelty' was explicitly listed as a basis for a departure under the 1987 Regulations." 551 F. Supp. 2d at 95 n.33. Plaintiff is correct that, "[i]t is the substance of the Commission's decision, not any magic words," which matters. (Pl. Rep. at 7.) In this instance, it is clear that the USPC's use of the word "brutality" rather than "cruelty," and its indication that the SFS score did not reflect the seriousness of the crime, does not change the fact that the cruelty of the underlying crime was the reason for the USPC's departure. Cole would have been denied parole under the 1987 Regulations regardless, so the 2004 denial did not constitute an *ex post facto* violation. *See Fletcher,* 433 F.3d at 877-78.

### C. Cole's Parole Was Denied for Unusual Cruelty to Victims in 2010

Cole's 2010 parole denial was based on substantially the same reason. As plaintiff points out, the logic of this denial was the functional equivalent of the 2004 denial with changes in wording made to ensure compliance with *Sellmon*. (Pl. Rep. at 7.) Therefore, since the 2004 decision was proper, the 2010 decision is as well. Just as with the 2004 decision, because Cole

would have been denied parole under the 1987 Regulations for unusual cruelty, the 2010 denial did not constitute an *ex post facto* violation either.  *See Fletcher,* 433 F.3d at 877-78.

### D.  The Appendix 2-1 Factors Are Applicable to Parole Rehearings

Plaintiff's final argument in support of his *ex post facto* claims is that the USPC erred by considering "unusual cruelty to victims," at a parole rehearing, as opposed to an initial hearing. (Pl. Rep. at 7.)  Admittedly, "unusual cruelty to victims" is listed as a relevant factor only in Appendix 2-1, and not in Appendix 2-2.  D.C. Mun. Regs., tit. 28 § 204.1, apps. 2-1 & 2-2. Plaintiff argues that only the factors listed in Appendix 2-2 of the 1987 Regulations were applicable to parole rehearings, and the factors listed in Appendix 2-1 were only applicable to initial hearings.  (Pl. Rep. at 7.)

Plaintiff's argument is based on the fact that the factors are set forth in two different appendices, and the second is entitled "Rehearing Guidelines."  D.C. Mun. Regs., tit. 28, apps. 2-1 & 2-2.  Plaintiff contends that this differentiation is a product of the spirit of the 1987 Regulations' emphasis on rehabilitation, which Plaintiff argues explains the fact that Appendix 2-1 allowed the consideration of pre-conviction factors to justify guideline departures at initial hearings, but they are not listed in Appendix 2-2  (*Id.* at 13.)

The Court is not persuaded that the Appendix 2-1 factors do not apply to parole rehearings.  The D.C. Court of Appeals and this Court have consistently upheld denials of parole on grounds other than those listed in Appendix 2-2, and, in fact, this Court did just that in *Sellmon.  See also United States v. Wiggins*, No. 94-2609, 1999 U.S. Dist. LEXIS 22978, at *2-4 (Nov. 22, 1999);[4] *McRae v. Hyman,* 667 A.2d 1356, 1361 (D.C. 1995) (departure warranted

---

[4] Plaintiff contends that this case is inapplicable since we do not know that Wiggins was presumptively suitable for parole.  (Pl. Rep. at 8.)  However, for him to have been denied parole

11

based on unusual cruelty); *cf. Hall v. Henderson,* 672 A.2d 1047, 1056 (D.C. 1996) (extended time between rehearings based on unusual cruelty). While the title of Appendix 2-2 makes it clear that the factors listed are only applicable at rehearings and not at initial hearings, D.C. Mun. Regs., tit. 28, app. 2-2, it does not follow that the factors set forth in Appendix 2-1 only apply to initial hearings. *Id.* Appendix 2-1 is not titled "Preliminary Hearing Worksheet," but does not have a title. *Id.* app. 2-1.  Additionally, it is implausible that the legislature could have meant to remove all pre-incarceration factors from the Board's consideration after the preliminary hearing, especially given the discretion granted by the organic statute. *See* D.C. Code § 24-404; *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1419 (D.C. Cir. 1996).  That Appendix 2-1 factors could be considered at rehearings is further underscored by the use of the conjunctive in the first parole regulation: "[a]ny parole release decision falling outside the numerically determined guideline shall be explained by reference to the specific aggravating or mitigating factors as stated in Appendices 2-1 *and* 2-2.  D.C. Mun. Regs., tit. 28 § 204.1 (emphasis added).  Just because Appendix 2-2 takes into account factors that have changed since the preliminary hearing, it does not preclude consideration of those pre-incarceration factors listed in Appendix 2-1.

Additionally, the 1991 Policy Guidelines published by the Board include no indication that the Appendix 2-1 factors could not be applied at rehearings. (Def. Mot. Ex. S.)  While those guidelines are not controlling, because Cole committed his crime prior to their promulgation, they are probative of the fact that the Board was not limited to the Appendix 2-2 factors at rehearings.  Lastly, the background report to the 1987 Regulations makes no distinction between initial hearings and rehearings when discussing the applicability of pre-incarceration factors to the decision to depart from the SFS. (Def. Mot. Ex. R at 22.)  Rather, the report implies that pre-

---

for being "a cold blooded killer," *Wiggins*, 1999 U.S. Dist. LEXIS 22978 at *2  he had to have been presumptively suitable, or he would have been denied parole based on his SFS score.

incacrceration factors, all listed in Appendix 2-1, apply at all hearings, regardless of whether they are initial hearings or rehearings. (*Id.*)

In sum, plaintiff's reading of the 1987 Regulations as limiting departures at rehearings to the three Appendix 2-2 factors has no support in the case law, the 1991 Policy Guidelines, the Background Report, or the plain language of the regulations themselves. For these reasons, the Court finds that the factors set forth in Appendix 2-1 apply to rehearings, and the USPC's 2004 and 2010 decisions to deny Cole parole, based on the Appendix 2-1 factor of "unusual cruelty to victims," were proper under the 1987 Regulations and did not violate the *Ex Post Facto* Clause.

## II. ADMINISTRATIVE PROCEDURE ACT

Plaintiff also challenges the 2010 denial as arbitrary and capricious and thus in violation of the APA, because of its reference to the "likelihood of repeat violent behavior." (Pl. Mot. at 26.) For the purposes of the APA, the decision to grant or deny parole is committed to the USPC's discretion by law. 18 U.S.C § 4218(d) and 5 U.S.C. § 701(a)(2); *see also Clardy v. Levi*, 545 F.2d 1241, 1245 (9th Cir. 1976) ("Congress . . . carefully exclud[ed] from the scope of the APA all functions of the new Parole Commission other than the rule-making process."). The Court therefore has jurisdiction only to determine whether the Commission has violated an explicit requirement of its organic statute, its internal regulations or the Constitution, but not to review substantive decisions. *Jones v. U.S. Bureau of Prisons,* 903 F.2d 1178, 1183-84 (8th Cir. 1990); *Wallace v. Christensen,* 802 F.2d 1539, 1551-52 (9th Cir. 1986) (en banc); *Garcia v. Neagle*, 660 F.2d 983, 988-89 (4th Cir. 1981); *see also Farakas v. United States,* 744 F.2d 37, 38-39 (6th Cir. 1984). Here, the Commission adhered to its internal regulations, its governing statute and the Constitution. Rather, plaintiff's challenge under the APA is limited to the substance of the USPC's decision, which is not reviewable under the APA. *See Fletcher v. Dist.*

*of Columbia,* 481 F. Supp. 2d 156, 164 (D.D.C. 2007) ("Parole decisions by the Commission are committed to the agency's discretion and are thus exempt from review under the APA. Plaintiff's challenge to the Commission's []parole decision is not subject to APA review, and the general waiver of sovereign immunity in § 702 of the APA does not enable plaintiff to proceed with his action for injunctive relief against the Commission under § 1983") (citing, *Turner v. Henman,* 829 F.2d 612, 614 (7th Cir. 1987); *Payton v. United States,* 679 F.2d 475, 484 n.5 (5th Cir. 1982)), *vacated in part on other grounds,* by *Fletcher v. U.S. Parole Comm'n,* 550 F. Supp. 2d 30 (D.D.C. 2008).

Plaintiff cites several cases in which courts have reviewed USPC decisions for abuse of discretion in *habeas corpus* cases, but none in which the same was done under the APA. (Pl. Rep. at 19, n.7.) Plaintiff also cites *CityFed Fin. Corp. v. Fed. Home Loan Bank Bd.,* 615 F. Supp. 1122, 1132 (D.D.C. 1985), for the proposition that even a decision committed to agency discretion by law may be judicially reviewed when it contradicts an agency's earlier findings. (Pl. Mot. at 19.) However, that is not this case. The USPC had already denied Cole parole twice, and had never made a finding that he was not a danger for recidivism, even if individual examiners expressed an opposite opinion. Because the USPC's decision is not reviewable under the APA, defendants' summary judgment motion will be granted and plaintiff's will be denied.

## CONCLUSION

For the reasons stated above, defendants' motion will be granted and plaintiff's motion will be denied. A separate Order accompanies this Memorandum Opinion.

                                                /s/
                                    ELLEN SEGAL HUVELLE
                                    United States District Judge

Date: July 25, 2012